259 P.2d 356

**STATE v. SPEARS.**

No. 5543.

Supreme Court of New Mexico.

May 6, 1953.

Appellee's Motion for Rehearing Granted

July 7, 1953.

Appellant's Motion for Rehearing Denied

July 14, 1953.

Neal & Girand and Brand & Cowan, Hobbs, for appellant.

Joe L. Martinez, Atty. Gen., and Hilario Rubio, Asst. Atty. Gen. (Richard H. Robinson, Atty. Gen., Fred M. Standley, Asst. Atty. Gen., on rehearing), for appellee.

LUJAN, Justice.

From a judgment overruling his motion to quash the information filed against him by the State for engaging in business as real estate broker without first obtaining a license, in violation of Chapter 224, Session Laws of 1951, the defendant (appellant) prosecutes this appeal.

. The case was submitted to the court upon the following stipulated facts:

"That Glin Spears, the defendant in the above styled and numbered cause, is a person of good moral character and from the standpoint of his reputation and character qualified to obtain a real estate license in the State of New Mexico.

"That the defendant, Glin Spears, has engaged in the real estate business in the City of Hobbs, Lea County, New Mexico from March of 1944 until on or about the 20th day of February, 1952.

"That said Glin Spears has never at any time during the period he has been engaged in the real estate business had a real estate broker's license in the State of New Mexico."

The issues raised by this appeal are the constitutionality of the above Act, the pertinent provisions of which provides:

Sec. 8. "Licenses shall be granted only to persons who are trustworthy and competent to transact the business of a real estate broker or real estate salesman in such manner as to safeguard the interests of the public and only after satisfactory proof has been presented to the board. . Every applicant for a license as a real estate broker shall. be of the age of twenty-one years

or over, and a citizen of the United States. Broker's licenses may be issued to partnerships, associations or corporations, provided at least one member or officer or employee thereof meets all requiremnts of this Act for an individual broker, and provided further that all members, officers or employees, who actively engage in the real estate business first secure either a broker's license or salesman's license."

Sec. 9. "All applications for license to act as real estate brokers shall be made in writing to the New Mexico Real Estate Board and shall contain such data and information as may be required upon a form to be prescribed and furnished by the board. Such application shall be accompanied by: (a) the recommendation of two reputable citizens who own real estate in the county in which the applicant resides or has his place of business, which recommendation shall certify that the applicant is of good moral character, honest and trustworthy; (b) the annual license fee prescribed by the board, which shall not be refunded in any event; (c) any applicant required to take the written examination herein prescribed for the issuance of a license shall pay an examination fee of Five Dollars ($5.00); provided that any applicant who fails to pass the examination for a license may apply for another examination within one (1) year and shall be given a second examination upon payment of a further fee of Five Dollars ($5.00), and without

being required to pay the initial annual license fee specified in sub-section (b) of this section.

"In addition to proof of honesty, trustworthiness and good reputation of any applicant for a license as herein set forth, the applicant shall submit to a reasonable written examination to be conducted by the board of such scope as the board shall prescribe to determine his qualifications to serve the public as a licensee under this Act.

\*    \*    \*    \*    \*    \*

"The board shall furnish to each applicant for examination a list of the subjects upon which the applicant is to be prepared, and said list shall be forwarded to the said applicants at least one (1) month prior to the date set for the examination.

\*    \*    \*    \*    \*    \*

"Upon the passage and approval of this Act a license as a real estate broker shall be issued by the board, without examination, to any one who is presently licensed under the provisions of Chapter 177 of the Session Laws of 1949; provided further that each of said brokers who have paid the license fees required by Chapter 177 of the Session Laws of 1949 shall not be required to pay any further license fee for the year 1951."

Sec. 12. "\* \* \* The decision of the. board in denying, suspending or revoking any license under this Act shall be subject

to review; and any party aggrieved by such decision of this board may within ten days from the date of said decision appeal therefrom to the District Court of the State of New Mexico in and for the County in which the person affected by such decision resides or has his place of business by serving upon the board a notice of such appeal. Upon the hearing of such appeal, which shall be tried de novo, the burden of proof shall lie upon the appellant and the court shall receive and consider any pertinent evidence, oral or documentary, concerning the action of the board from which the appeal is taken. Appeals to the Supreme Court shall lie as in other causes."

The defendant contends that the Act is unconstitutional and void, as a delegation to an administrative board of legislative power, which the State Constitution, article 4, section 1, declares "shall be vested in a senate and house of representatives". In our opinion this contention is untenable.

It is elementary that, while the Legislature may not delegate its powers to make laws, it may vest in administrative officers and bodies a large measure of discretionary authority especially to make rules and regulations relating to the enforcement of the law. Michigan Cent. R. Co. v. Powers, 201 U.S. 246, 26 S.Ct. 459, 50 L.Ed. 744; Leser v. Lowenstein, 129 Md. 244, 98 A. 712.

The constitutionality of a law is to be determined by its provisions, and not by the manner in which it may be administered; and, unless it conflicts with the Federal or State Constitutions, the law is valid. Arnold v. Board of Barber Examiners, 45 N.M. 57, 109 P.2d 779. The law here in question provides for the appointment of a board, made up of persons experienced in the real estate business, to which the duties imposed are intrusted for performance, and to which is committed the power to make and enforce any and all rules and regulations to carry out the provisions of the act and of prescribing such reasonable written examinations of such scope as to determine the qualifications of applicants, and it must be presumed that the board will exercise fairly and impartially the powers conferred.

"In order that a court may be justified in holding a statute unconstitutional as a delegation of legislative power, it must appear that the power involved is purely legislative in nature—that is, one appertaining exclusively to the legislative department. There are many powers so far legislative that they may properly be exercised by the legislature, but which may nevertheless be delegated, since the legislature may delegate any technically nonlegislative power which it may itself lawfully exercise. While it cannot abdicate

its general law-making powers, it may authorize others to do things which it might properly do, but which it cannot conveniently or advantageously perform. * * *" 11 Am.Jur. Section 214, page 923.

The constitutionality of statutory provisions authorizing executive or administrative officers or boards to formulate rules and regulations to make the statute effective for the public purpose designed has generally been assumed or conceded without question. But in a number of well considered cases it has been distinctly held that where a valid statute complete in itself enacts the general outlines of a governmental scheme, policy, or purpose, and confers upon officials charged with the duty of assisting in administering the law to make, within designated limitations to judicial review, rules and regulations, or to ascertain facts, upon which the statute by its own terms operates in carrying out the legislative purpose, such authority is not an unconstitutional delegation of legislative power. See State v. Chicago, M. & P. Ry. Co., 38 Minn. 281, 37 N.W. 782; Union Bridge Co. v. United States, 204 U. S. 364, 27 S.Ct. 367, 51 L.Ed. 523.

If the regulations or actions of an official or board authorized by statute do not in effect determine what the law shall be, or do not involve the exercise of primary and independent discretion, but only determine with defined limits, and sub-ject to review, some fact upon which the law by its own terms operates, such regulation or action is administrative, and not legislative, in its nature and effect. The effect and operation of a statute may be made conditional or contingent upon the ascertainment of particular facts, and may be made to depend upon a subsequent event. This principle has been applied in regulations relating to occupations, trades, liquor, schools, and many other public purposes. See Fillmore Union High School Dist. of Ventura County v. Cobb, 5 Cal. 2d 26, 53 P.2d 349; Chambers v. McCollum, 47 Idaho 74, 272 P. 707; State ex rel. Hughes v. Milhollan, 50 N.D. 184, 195 N. W. 292, State v. Gerhardt, 145 Ind. 439, 44 N.E. 469, 33 L.R.A. 313; Clark v. State, 169 Miss. 369, 152 So. 820.

In State v. Briggs, 45 Or. 366, 77 P. 750, 752, 78 P. 361, the validity of an act authorizing the appointment of a state barber's board, with power to prescribe the qualifications of barbers, was upheld. The court stated that "the provision of the act * * * vesting authority in the board of examiners to prescribe the qualifications of a barber, is not a delegation of legislative power." The act provides for the appointment of a board of examiners; defines the powers and duties of the board, among which is " 'to make such by-laws as it may deem necessary not inconsistent with the Constitution of this state, or with the provisions of this act, and shall pre-

scribe the qualifications of a barber in this state' ([Laws 1903] p. 27, § 2); declares that it shall be unlawful for any person not registered to practice the business of a barber, or conduct a barber shop or barber school, without the sanction of the board (Id. pp. 27, 32, §§ 1, 12); and provides a penalty for the violation of its provisions (Id. p. 31, § 10)."

The court further said:

"While the law defines what shall constitute a barber, it does not prescribe the standard or degree of knowledge, learning, experience, or qualification which shall be required before applicants shall be licensed or authorized to practice or follow the trade or calling, but leaves that matter to be determined by the board of examiners. This, it is argued, renders the act void, because it is a delegation of legislative authority, and vests in the board arbitrary and unregulated powers. The position of the defendant is that, while the Legislature may lawfully regulate the trade or calling of a barber, and require all persons following it to register, or obtain certificates from the board of examiners, it must provide in the act the standard of qualification required, leaving to the board the mere duty of ascertaining whether the applicant possesses such qualification. Legislative power cannot be delegated, and the Legislature cannot confer upon any person, officer, or tribunal the right to determine what the law shall be. This is a function which the Legislature alone is authorized under the Constitution to exercise. The constitutional inhibition, however, cannot be extended so as to prevent the Legislature from conferring authority upon an administrative board to adopt suitable rules, by-laws, regulations, and requirements to aid in the successful carrying out and execution of a law it has passed."

It is next contended that the provisions of the Act requiring the New Mexico Real Estate Board to issue a real estate broker's license to all persons who possessed a license under the prior act without regard to whether or not such persons were competent to act as such real estate brokers in such a manner as to safeguard the interests of the public, while at the same time requiring an examination of all other persons, contravenes the provisions of the State Constitution, and is an unconstitutional classification that deprives the defendant of the equal protection of the laws and of valuable property rights, and contravenes Section 24, Article 4 of the Constitution. We are, likewise, of the opinion that this contention is untenable.

It appears from the agreed state of facts that the defendant was actually engaged

in the occupation of real estate broker for five years prior to the passage of the 1949 Act and eight years prior to the passage of the act in question.

In Section 9 it is provided that: "Upon the passage and approval of this Act a license as a real estate broker shall be issued by the board, without examination, to any one who is presently licensed under the provisions of Chapter 177 of the Session Laws of 1949; * * *".

This argument denies to the Legislature the power to discriminate between persons already lawfully pursuing an occupation subject to the police power and persons who may thereafter seek to engage in the same business. Such a contention, if admitted, would prevent the Legislature from requiring additional qualifications for persons desiring to engage in many callings and professions which cannot be carried on without a previous license.

In Hutcheson v. Atherton, 44 N.M. 144, 99 P.2d 462, 465, the court speaking through Justice Sadler, said:

"Such argument, addressed to the legislature whose duty it is in the first instance to determine such matters, might have been very persuasive in moving it, upon a question of policy, to reject the classification made. When it has spoken, however, the question of wisdom or unwisdom in its decision is usually settled. Its voice is supreme upon the subject of classification for purposes of legislation so long as there is to be found any reasonable basis for the distinction employed. The fact that it appears unreasonable to the courts is not decisive. Is it so wholly devoid of any semblance of reason to support it, as to amount to mere caprice, depending on legislative fiat alone for support? If so, it will be stricken down as violating constitutional guaranties. But the fact that the legislature has adopted the classification is entitled to great weight." Citing cases.

See, also Davy v. McNeill, 31 N.M. 7, 240 P. 482; Hall v. Geiger-Jones Co., 242 U. S. 539, 37 S.Ct. 217, 61 L.Ed. 480.

A number of statutes in this state, requiring persons to procure a license before engaging in certain pursuits, exempt those already actually so engaged. A cursory examination of our statutes shows that this exemption has been extended to physicians, nurses, dentists and attorneys-at-law. We are not aware that statutes of this kind have ever been declared void as denying the equal protection of law. They recognize the distinction between persons actually engaged in certain callings from which they obtain a livelihood and in which they may have invested capital, and persons not so engaged. The two classes are not similarly situated; the ones having

rights already vested or at least recognized by law, and the other a mere hope or expectation of embarking in the same calling at a future date.

In Del Mar Canning Co. v. Payne, 29 Cal.2d 380, 175 P.2d 231, 232, the court said:

"A classification which draws the line in favor of existing businesses as against those later entering the field will be upheld if any reasonable and substantial basis can be found to justify the classification." People v. Western Fruit Growers, 22 Cal.2d 494, 506, 140 P.2d 13, citing cases.

If the defendant had complied with the provisions of the Act, and the board had arbitrarily refused him a license, he has his remedy by appeal to the district court.

The act as a whole deals with two classes of real estate brokers: (1) Those who were engaged in the business before its passage and who were licensed under a prior law; and (2) those who intend to enter into the business after the act became a law. The persons in the first class are not required by the act to stand an examination as to their honesty, trustworthiness, good moral character and good reputation or qualifications to discharge in a competent manner the duties of real estate brokers. They were doubtless excused from taking the examination upon the theory that, as they had been engaged and licensed in the business prior to the act, it might reasonably be assumed that they were qualified to perform such duties. But this class must still pay an annual fee provided for by the act if they care to remain in business. The second class are also regulated by the law. It will thus be seen that, with the exception of the exemption from examination allowed those who had been licensed by a prior law in the occupation before the act became a law, all other provisions of the act became immediately operative upon every real estate broker in the State. The fact that persons engaged in the business, licensed under a prior law, are exempt from examination which others must submit to is not an unlawful discrimination in their favor. Similar exemptions may be found in acts relating to dentists, pharmacists, and the practice of medicine, and these acts have been upheld. See, Driscoll v. Commonwealth, 93 Ky. 393, 20 S.W. 431; Hargan v. Purdy, 93 Ky. 424, 20 S.W. 432; Webster v. State Board of Health, 130 Ky. 191, 113 S.W. 415; Kentucky Board of Pharmacy v. Cassidy, 115 Ky. 690, 74 S.W. 730; Smith v. State Board of Dental Examiners, 113 Ky. 212, 67 S.W. 999.

The right of a citizen under our Constitution to follow any legitimate business, occupation, or calling which he may see fit to engage in, and to use such right as a means of livelihood, is fully secured; but it is subject to the paramount right of

the State to impose upon the enjoyment of such a right a reasonable regulation which the public welfare may require. See, State ex rel. New Mexico Dry Cleaning Board v. Cauthen, 48 N.M. 436, 152 P.2d 255.

▇▇▇▇ We regard the business of a real estate broker as so intimately connected with the public welfare of the citizens that there ought not to be any doubt that its regulations fall within the authority of the Legislature in the exercise of its police power. The contention that the Act conflicts with Article 2, Section 18, of the State Constitution, which provides that "No person shall be deprived of life, liberty or property without due process of law; nor shall any person be denied the equal protection of the laws", is, we think, without basis. The act applies alike to every person engaged or desirous of engaging in the business of real estate broker within the State. A large discretion is necessarily vested in the Legislature to determine, not only what the interests of the public require, but what measures are necessary for the protection of such interests. See Caven v. Coleman, Tex.Civ.App., 96 S.W. 774; State v. Call, 121 N.C. 643, 28 S.E. 517.

▇▇▇▇ It is next contended that the Legislature has no power to provide for the regulation of the business of real estate brokers by prohibiting all persons from engaging in that business who do not meet the standard of trustworthiness, honesty, good reputation and competency.

The business of real estate broker is one properly subject to police regulation, and in the exercise of its police power the State may require that all applicants be honest, trustworthy and of good moral character and reputation before a license is issued to them to engage in business. This question was before the Supreme Court of California in Riley v. Chambers, 181 Cal. 589, 185 P. 855, 856, 8 A.L.R. 418, wherein it said:

"Now, the single primary purpose of the act is to require of real estate brokers and salesmen that they be 'honest, truthful and of good reputation.' All of its provisions, including the requirements of a license, are but incidental to this single purpose and designed to accomplish it.

\*  \*  \*  \*  \*  \*

"Where the occupation is one wherein those following it act as the agents and representatives of others and in a more or less confidential and fiduciary capacity, it certainly can be fairly said that those pursuing it should have in a particular degree the qualifications of 'honesty, truthfulness and good reputation.' The occupation of a real estate agent is of just this sort. He acts for others and in a more or less confidential and fiduciary capacity. As

a result there is particularly required of him for the proper discharge of his duties honesty and truthfulness, and the Legislature has the right to require some assurance of their possession by every one following the occupation. One strong assurance of their possession is a good reputation.

\* \* \* \* \* \*

"If the limitation is of this character, its imposition is a proper exercise of the police power resident in the Legislature, and whose exercise is one of the latter's most important functions."

See, also, Roman v. Lobe, 243 N.Y. 51, 152 N.E. 461, 462, 50 A.L.R. 1329; State v. Polakow's Realty Experts, 243 Ala. 441, 10 So.2d 461; Hall v. Geiger-Jones Co., supra.

█ Finally it is contended that the Act is void and unconstitutional in its failure to provide penalties equally applicable to all persons coming within the prohibition of the act. Section 2 reads:

"A real estate broker within the meaning of this Act is any person, firm, partnership, copartnership, association or corporation, who for a salary, fee, commission or valuable consideration lists, sells or offers for sale, buys or offers to buy, \* \* \*."

Section 16 provides:

"Any person or corporation violating a provision of this Act shall, upon conviction thereof, if a person, be punished by a fine of not more than Five Hundred Dollars ($500.00), or by imprisonment for a term not to exceed six (6) months or by both such fine and imprisonment, in the discretion of the court, and if a corporation, be punished by a fine of not more than One Thousand Dollars ($1,000.00). Any officer or agent of a corporation, or member or agent of a corporation or association, who shall personally participate in or be an accessory to any violation of this Act, by such copartnership, association or corporation, shall be subject to the penalties herein prescribed for individuals."

It is to be noted that penalties are prescribed by the act for the punishment of persons and corporations as well for officers, agents or members of a copartnership and association, but none as to firms and partnerships.

In disposing of this question we will adopt the conclusions reached by the court in People v. Schomig, 74 Cal.App. 109, 239 P. 413, 414. In that case the defendant was convicted of engaging in the business of real estate broker and salesman without first obtaining a license as required by law. Section 1 of the California Act, St.1919, p. 1252, provided:

"It shall be unlawful for any person, copartnership or corporation to engage

in the business, or act in the capacity of a real estate broker, or a real estate salesman within this state without first obtaining a license therefor."

Section 2 of the California Act, insofar as it is material, provided:

"A real estate broker within the meaning of this act is a person, copartnership or corporation who, for a compensation, sells, * * * real estate, * * * for others as a whole or partial vocation."

Section 17 of the California Act was the penalty section, and provided:

"Any person or corporation acting as real estate broker or real estate salesman, within the meaning of this act without a license as herein provided, shall, upon conviction thereof, if a person, be punished by a fine of not to exceed two thousand dollars, or by imprisonment in the county jail or state prison for a term not to exceed two years, or by both such fine and imprisonment, in the discretion of the court; or if a corporation, be punished by a fine of not to exceed five thousand dollars."

In answer to the contention that the California law was discriminatory in violation of the California constitution and Amendment 14 of the constitution of the United States, the California court stated, 239 P. at page 414:

"In reference to copartnerships it will be noted that penalties are prescribed by the act for the punishment of individuals and corporations, but none as to copartnerships. We are of the opinion, however, that this omission does not affect the constitutionality of said act for the reason that in so far as criminal responsibility is concerned, a partnership is not recognized as a person separate from its component members in the sense that a corporation is a separate entity (People v. Maljan, 34 Cal.App. 384, 167 P. 547) and therefore cannot commit a crime. California Jurisprudence (vol. 20, p. 680) states the rule in the following language:

" 'In most respects a partnership is but a relation, with no legal being as distinct from the members who comprise it. It is not a person, either natural or artificial. Thus a partnership, as such, cannot be guilty of crime, but guilt attaches to the delinquent member or members'—citing People v. Maljan, supra, and other cases.

"True, it has been held that a partnership may be regarded as a separate entity for some purposes (Furlow P[ressed] B[rick] Co. v. Balboa L & W Co., 186 Cal. 754, 200 P. 625; Modesto Bank v. Owens, 121 Cal. 223, 53 P. 552; Gleason v. White, 34 Cal. 258; John Bollman Co. v. S. Bachman & Co., 16 Cal.App. 589, 117 P. 690, 122 P.

835), but those purposes are entirely dissociated with the question of responsibility for the commission of criminal acts; and our attention has not been called to any case wherein a copartnership has been treated as a 'person' and thus subjected to punishment for committing a criminal act. * * "

It follows from what has been said that the judgment must be affirmed.

It is so ordered.

COMPTON and COORS, JJ., concur.

SADLER, C. J., and McGHEE, J., did not participate.

On Appellee's Motion for Rehearing

PER CURIAM.

This matter coming on for hearing on appellee's motion for rehearing and the briefs supporting and opposing the same, and the appeal having been considered as if on rehearing, and now so considered, and the Court being well and sufficiently advised in the premises, Mr. Justice LUJAN, Mr. Justice COMPTON and Mr. Justice COORS agreeing, is convinced that the opinion of the Court heretofore filed herein on May 6, 1953, is erroneous in reversing the judgment reviewed instead of affirming the same;

Now, therefore, it is ordered that the motion for rehearing be and the same is hereby formally granted; and

It is further ordered that pages numbered 10, 11 and 12 of said opinion heretofore filed herein be and they are hereby withdrawn, and that pages 10, 11, and 12 be and they are hereby substituted therefor.

It is so ordered.